## MURRAY D. AGATE and EDITH M. AGATE
### *v.* DEPARTMENT OF REVENUE

J. Ray Rhoten, Rhoten, Rhoten & Speerstra, Salem, represented plaintiffs.

G. F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered March 2, 1972.

CARLISLE B. ROBERTS, Judge.

Plaintiffs appeal from the Department of Revenue's Order No. VL 71-529 which sustained Lane County's valuation of $26,430 on certain real property for the 1970-1971 tax year. Plaintiffs contend that the true cash value of such property on January 1, 1970, was $18,000, and that the assessment and tax rolls of Lane County should be corrected accordingly.

At all times material to this cause, plaintiffs were the owners of a single-family residence in Lane County known as 1572 Ferry Street, Eugene, Oregon. The property is legally described as Lot 4, Block 3, Kelsey's Addition, as platted and recorded in Volume 2, Page 44, of the Lane County Plat Records; it is designated on the Lane County assessment roll as No. 17-3-32-3-3-6300, Code 4-00.

The subject property is situated about one-half mile from the University of Oregon campus in a resi-

dential area zoned R-3, which includes numerous multi-family living facilities. It consists of a one-story house and garage (built in 1914, remodeled in 1955), situated on a lot measuring 66.8 feet by 160 feet. In the immediate neighborhood, new apartments are replacing residences. The subject property is located between a modern two-story apartment house on the north and an old duplex on the south.

At the trial, the plaintiffs called an experienced fee appraiser and a realtor as witnesses; both parties were familiar with the subject property and with the Eugene area. Each testified that the highest and best use of the land in 1970 was to improve it with an eight-apartment-multifamily dwelling. They each valued the subject property at $20,000, which was determined by multiplying the per unit cost of land necessary for one apartment by eight ($2,500 times eight). Each testified that the present residence would not add value to the land if the land were used at its highest and best use and that the present structures must be razed to accommodate an eight-apartment dwelling.

To bolster their true cash value estimate of the subject, three comparable sales in the immediate neighborhood were used. The comparables indicated that $2,500 per rental unit for land was the going rate in 1970. Moreover, the comparable sales and present land use conclusively showed that buyers were removing substantial improvements and building multiple-dwelling units in their place.

Witnesses for both the plaintiff and the defendant were in agreement as to the highest and best use of the subject property; i.e., the site for a multiple dwelling. They also agreed that the whole neighborhood was in an advanced state of transition from single-

family to multifamily use, and had been zoned accordingly. However, no evidence was adduced to suggest that the use-density of multiple dwellings had come into balance. (See American Institute of Real Estate Appraisers, *The Appraisal of Real Estate,* 31 (4th ed 1964).)

A preponderance of the evidence leads the court to conclude that the present buildings on the site could not economically be converted to a multiple dwelling and would have to be removed to permit construction of buildings designed for multifamily purposes and still meet the zone requirements for off-street parking of motor vehicles.

Although they agreed that the highest and best use of the land was for multiple dwellings, the defendant's witnesses testified at length to prove the value of the residence was $20,000 and that the value of the land, "as zoned for multifamily use," was worth $16,080, but this latter value they "discounted to $6,430 as an estimate of value in its present use." (See Defendant's Exhibit A, page 2.) This appears illogical, but some justification for this conclusion may be found in the last paragraph of a statement on "Consistent Use Theory," found in *The Appraisal of Real Estate, supra,* 32-33:

> "A property in transition from one use to another cannot be valued on the basis of one use for land and another use for improvements, for to do so would be inconsistent with the economics of valuation. The improvements must enhance the value of the land. A dwelling which may have many years of remaining life for residential use could not possibly enhance the value of the land the higher use of which would be, say, as a service station, excepting as a taxpayer for interim use while the land is in transition.

> "Following the theory of valuing the land as though vacant for immediate use, such as a service station site, the improvements would have no value. They might possibly have a minus value because it may be necessary to remove the improvements, and the cost of such removal would be a penalty against the land value.
>
> "But where the transition to highest and best use is deferred, then the element of interim use should be considered and the improvements would be valued on the basis of enhancement of value to the site, measured by comparison with similar market sales, if available, and by consideration of the income produced for the interim period."

However, the court finds that the defendant's support of this view, as stated in the last paragraph above, using a comparison of similar market sales, did not survive cross-examination.

After reviewing the record, the court concludes that the true cash value of the subject property as of January 1, 1970, was $20,000. The Department of Revenue's order is set aside and the Director of the Department of Assessment and Taxation and the Tax Collector of Lane County are directed to correct the 1970-1971 assessment and tax rolls accordingly.